# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

ECHOSTAR CORPORATION,

      Petitioner,

      v.

FEDERAL COMMUNICATIONS
COMMISSION and UNITED
STATES OF
AMERICA,

      Respondents.

No. 25-9567

## STIPULATION OF VOLUNTARY DISMISSAL
## WITH PREJUDICE

The parties to the above-captioned matter have resolved EchoStar's Petition for Review in this case (the "Petition") by reaching the Settlement Agreement in the attached exhibit, which the Office of General Counsel of the Federal Communications Commission published in the agency dockets below on May 28, 2026.[1] The Settlement Agreement is final and requires EchoStar to "dismiss the … Petition with prejudice" within "three (3) business days of the Execution Date."[2]

---

[1] *See* Exh. 1 (Public Notice); Exh. 2 (Settlement Agreement).
[2] Exh. 2 ¶ 7

Therefore, it is hereby stipulated and agreed, by and between the undersigned, that the Petition is dismissed with prejudice, without costs and without attorneys' fees, pursuant to Federal Rule of Appellate Procedure 42(b)(1).

Dated: June 1, 2026

Respectfully submitted,

/s/ *Pantelis Michalopoulos*

/s/ *Jacob M. Lewis*

Pantelis Michalopoulos
Matthew R. Friedman
Andrew Magloughlin
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000
pmichalopoulos@steptoe.com

*Counsel for Petitioner EchoStar
Corporation*

D. Adam Candeub
*General Counsel*

Jacob M. Lewis
*Associate General Counsel*

Sarah Citrin
*Deputy Associate General Counsel*

Maureen Katherine Flood
*Trial Attorney*

Federal Communications
Commission
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal
Communications Commission*

/s/ *Robert Nicholson*

Robert Nicholson
Robert J. Wiggers
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-2489

*Counsel for Respondent United
States of America*

# EXHIBIT 1
*Public Notice (DA-26-537)*

**PUBLIC NOTICE**

Federal Communications Commission
45 L Street NE
Washington, DC 20554

News Media Information 202-418-0500
Internet: www.fcc.gov

**DA 26-537**
**Released:  May 28, 2026**

**PUBLIC NOTICE**

**GN Docket No. 25-70**
**GN Docket No. 25-71**
**GN Docket No. 13-185**
**AU Docket No. 25-117**

Today the Federal Communications Commission (FCC) and EchoStar Corporation (EchoStar) entered into a settlement agreement regarding EchoStar's assumption of payment obligations arising from FCC Auction 97 defaults.  The settlement agreement is attached to this *Public Notice*.

**– FCC –**

# EXHIBIT 2
## Settlement Agreement

# SETTLEMENT AGREEMENT

This **Settlement Agreement** ("Agreement") is entered into as of May 28, 2026 ("Execution Date"), by and among the Federal Communications Commission ("FCC" or the "Commission"); EchoStar Corporation, a Nevada corporation ("EchoStar"); EchoStar's subsidiary, DISH Network Corporation, a Nevada corporation ("DISH"); DISH's subsidiary, Northstar Wireless, LLC, a Delaware limited liability company ("Northstar"); and DISH's subsidiary, SNR Wireless LicenseCo, LLC, a Delaware limited liability company ("SNR"; collectively, together with EchoStar, DISH, and Northstar, the "Companies") (Companies, together with the FCC, the "Parties").

## RECITALS

WHEREAS, Northstar and SNR previously participated and bid in a previous spectrum auction, FCC Auction 97, for certain licenses, as listed in **Exhibit A** ("Original Licenses");

WHEREAS, Northstar and SNR were the winning bidders for the Original Licenses at FCC Auction 97, but have not paid the amounts due for those licenses and each of Northstar and SNR acknowledge and understand that they are deemed to have defaulted on their bids ("Auction 97 Defaults");

WHEREAS, as a result of the Auction 97 Defaults, the spectrum underlying the Original Licenses ("Auction 97 Spectrum") will be underlying certain of the licenses available for bidding in the upcoming FCC Auction 113;

WHEREAS, as a result of the Auction 97 Defaults, Northstar and SNR, pursuant to 1.2104(g)(2) of the Commission's rules,[1] have potential liability for (a) bid deficiency payments of up to $2,226,129,000 and $1,210,905,600, respectively, for a total of $3,437,034,600 ("Bid Deficiency Amount"), plus (b) an additional payment of 15% of the deficiency payments, up to $333,919,350 and $181,635,840, respectively, for a total of $515,555,190 ("Additional Amount");

WHEREAS, on October 1, 2015, DISH irrevocably and unconditionally guaranteed the amounts owed by Northstar (that certain Guaranty of Certain Obligations to FCC made by DISH Network Corporation on behalf of Northstar in favor of the FCC dated as of October 1, 2015 (the "Northstar Guaranty")) and SNR (that certain Guaranty of Certain Obligations to FCC made by DISH Network Corporation on behalf of SNR in favor of the FCC dated as of October 1, 2015 (the "SNR Guaranty")) under the Commission's rules as a result of their winning bids on the Original Licenses in FCC Auction 97, including, without limitation, the Bid Deficiency Amount and Additional Amount;

WHEREAS, on October 1, 2015, DISH made interim default payments on behalf of Northstar and SNR to the FCC totaling $515,555,190 ("Prior Payments");

WHEREAS, on January 2, 2024, EchoStar acquired DISH, which is now a wholly-owned subsidiary of EchoStar;

WHEREAS, on Aug. 29, 2025, EchoStar filed a Petition for Review in the United States Court of Appeals for the 10th Circuit (EchoStar Corp. v. FCC, No. 25-9567 (10th Cir., filed Aug. 29, 2025)) challenging the July 2025 *Report and Order* (*Enhancing National Security Through the Auction of AWS-3*

---

[1] 47 C.F.R. 1.2104(g)(2).

*Spectrum Licenses*, FCC 25-39 (rel. July 25, 2025)) adopting certain rule changes applicable to Auction 113 ("10th Circuit Petition");

WHEREAS, the Parties acknowledge that both the Bid Deficiency Amount and Additional Amount owed by Northstar and SNR, and unconditionally guaranteed by DISH, will ultimately be determined by the upcoming FCC Auction 113 and the winning bid(s) for the license(s) representing all or any part of the Auction 97 Spectrum ("New Licenses");

WHEREAS, to avoid disputes over debts and any litigation and resolve the administrative claims herein, the Parties have reached a settlement of the Bid Deficiency Amount, the Additional Amount, and the 10th Circuit Petition in accordance with the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and obligations of this Agreement, and for other good and valuable consideration, receipt whereof is hereby acknowledged, the Parties agree and covenant as follows:

1.      Definitions. Capitalized terms used herein shall have the meanings provided for in the preamble to this Agreement or in the section in which they first appear, each as indicated by quotation marks.

2.      Final Settlement.  This Agreement shall constitute a final settlement between the Parties with respect to the Bid Deficiency Amount, the Additional Amount, and the 10th Circuit Petition.  This Agreement is not an admission of facts or liability by the Companies, nor a concession by the FCC that its claims are not well-founded.

3.      Calculation of Settlement Amount and Payment.

a.      After the conclusion of FCC Auction 113, the FCC shall provide notice to the Companies of the results of FCC Auction 113 ("Auction 113 Notice"), which shall include a calculation of the amount to be paid by the Companies to the FCC in settlement of the Bid Deficiency Amount, the Additional Amount, and any claims related thereto (the "Settlement Amount").

b.      The Settlement Amount shall equal the maximum Bid Deficiency Amount, (i) less the sum of the aggregate net winning bid(s) for the New Licenses, and (ii) less the Prior Payments (it being understood that the Settlement Amount shall not exceed $2,921,479,410); *provided*, *however*, if any New License does not have a winning bid, then the net winning bid for such New License shall amount to $0 for purposes of calculating the sum in subclause (i) of this clause (b); *and provided further*, *however*, if the total calculation results in an amount less than or equal to $0, then the Settlement Amount shall equal $0, it being understood that the FCC shall retain the Prior Payment in full.  For example, if the aggregate net winning bid(s) in FCC Auction 113 by all bidders for the New Licenses equal $2,500,000,000, then EchoStar's Settlement Amount will equal $421,479,410.  This follows the above formula:  Bid Deficiency Amount minus the sum of the aggregate net winning bid(s) for the New Licenses minus the Prior Payments, or $3,437,034,600 - $2,500,000,000 - $515,555,190 = $421,479,410.  On the other hand, if the aggregate net winning bid(s) for the New Licenses equal or exceed $2,921,479,410, then EchoStar's Settlement Amount will equal $0.

c.      No later than within four (4) business days of the delivery of the Auction 113 Notice by e-mail pursuant to Section 13, EchoStar shall pay, by wire, the Settlement Amount ("Payment"), into an account designated by the FCC as set forth on **Exhibit B** attached hereto; *provided*, *however*, if the Settlement Amount is $0 then the FCC shall issue a Payment Confirmation (as defined below) stating that the Settlement Amount has been satisfied.  Upon the FCC's receipt of the Payment, the FCC shall

promptly confirm such receipt by providing written notice to the Companies in the manner set forth in Section 13 ("Payment Confirmation").

d.      Nothing in this Agreement precludes the Companies, or any of their subsidiaries or affiliates, from bidding on or winning any or all of the New Licenses; *provided*, *however*, that each of the Companies acknowledges and agrees that the Payment shall have no effect on their obligations, or any of their subsidiaries' or affiliates' obligations, with respect to any winning bids placed on New Licenses in FCC Auction 113 and, further, that they will make, or will cause any of their subsidiaries or affiliates to make, payment in full on any winning bids that they, or their subsidiaries or affiliates, place in FCC Auction 113 in accord with the procedures and within the time frames established by the Commission.

4.      <u>Guaranty and Joint and Several Liability</u>.

a.      EchoStar irrevocably and unconditionally guarantees, as primary obligor and not merely as surety, the due and punctual payment in full to the FCC of the Settlement Amount, as well as for any other liabilities, such as interest, pursuant to this Agreement (including amounts that would become due but for the operation of the Title 11 of the United States Code or other applicable law) (the "EchoStar Guaranty"), and the EchoStar Guaranty fully replaces and supersedes the NorthStar Guaranty and the SNR Guaranty); *provided*, *however*, that if this Agreement is terminated pursuant to Section 14(a), then EchoStar acknowledges and agrees that any and all claims of the FCC related to the Northstar Guaranty and the SNR Guaranty against the Companies are reinstated pursuant to Section 14(b).

b.      The Companies, including EchoStar, hereby acknowledge and agree that each of them has joint and several liability for all or any part of the Bid Deficiency Amount, the Additional Amount, and, subsequently, the Settlement Amount, as well as any interest, pursuant to this Agreement.

5.      <u>Default</u>.

a.      An event of default ("Default") under this Agreement shall occur if (i) EchoStar fails to make the Payment as set forth in Section 3 on or before the due date for such payment and in the manner such payment is described above; (ii) any of the representations and warranties contained in Sections 6 and 11 are misrepresentations, untrue, inaccurate, false, or otherwise incorrect; or (iii) any of the Companies fail to comply with any other term of this Agreement. The FCC shall promptly provide written notice of any Default in the manner set forth in Section 13.

b.      The Party that is defaulting shall then have an opportunity to cure the Default within five (5) days of the date of delivery of the notice of Default. In the event that a Default is not fully cured within five (5) days of the date of delivery of the notice of Default (an "Uncured Default"), Companies shall jointly and severally incur an obligation to pay interest on any then-unpaid amount that is then due and owing, which shall accrue at the rate specified by the Department of the Treasury to be used for Federal debt collection, also known as the Current Value of Funds rate, beginning five (5) days after the date of delivery of the notice of Default. In the event of an Uncured Default, the Companies further agree that the FCC, at its option, may (i) terminate this Agreement; (ii) seek specific performance of this Agreement; or (iii) exercise any other rights granted by law, or under the terms of this Agreement, or cognizable at common law or in equity.

c.      In the event that the FCC opts to terminate this Agreement pursuant to this Section, (i) the Releases shall be rescinded and the claims that had been released pursuant to the FCC Release shall be reinstated; and (ii) Companies shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any administrative claims that relate to the Bid Deficiency Amount, the Additional Amount, and any claims related thereto, except to the extent that

these defenses were available immediately prior to the Execution Date or arise following the date this Agreement is terminated; *provided*, *however*, that any applicable time limits shall be tolled between the Execution Date and the date of termination pursuant to this Section.

6.      Representations and Warranties.  The Companies represent and warrant that: (i) the Companies have the full legal right, corporate power, legal capacity, and authority to, and have taken all necessary corporate action on their parts as may be required under the laws of the states in which they are incorporated or organized and under their respective corporate organization and governance documents to, duly execute, deliver, consummate, and perform their obligations under this Agreement; (ii) this Agreement constitutes a valid, legal, and binding obligation of the Companies, enforceable against them in accordance with the terms hereof; and (iii) the Companies have previously provided the facts and information that are relevant to the matters contemplated by this Agreement to the FCC and are not aware of any other facts or information that would have a Material Adverse Effect on the matters contemplated by this Agreement.  "Material Adverse Effect" means any event, change, circumstance, occurrence, effect, result or state of facts that, individually or in the aggregate, is or would reasonably be expected to be substantially different from the facts underlying the Bid Deficiency Amount, the Additional Amount, and any claims related thereto or the facts offered by the Companies in settling these matters.

7.      Dismissal.  Within three (3) business days of the Execution Date, EchoStar shall dismiss the 10th Circuit Petition with prejudice.

8.      FCC Release.

a.      *FCC Release*.  In express reliance on the covenants and representations herein and to avoid further expenditure of public resources, upon the Payment Confirmation, the Commission (on behalf of itself, its officers, employees, and agents) shall release the Companies and any affiliates, subsidiaries, or parent corporations, and their predecessors, successors, and assigns, and any of their present or former members, managers, shareholders, directors, officers, and employees, agents and servants (the "Released Parties") from the Bid Deficiency Amount, the Additional Amount, the Northstar Guaranty, the SNR Guaranty, and any claims, including, any administrative claims, related thereto, except as otherwise provided for in clause (b) of this Section ("FCC Release"); *provided*, *however*, that if this Agreement is terminated pursuant to Section 14, then the FCC Release shall be rescinded consistent with the terms of Section 14.  For the avoidance of doubt, (i) the Commission agrees that the payment of the Settlement Amount by EchoStar pursuant to this Agreement (including upon a Payment Confirmation where the Settlement Amount equals $0) satisfies the deficiency payment condition on the AWS-3 licenses granted to SNR and Northstar as a result of FCC Auction 97 and (ii) the definition of Released Parties includes assignees and/or transferees of such AWS-3 licenses, including, without limitation, Spectrum Business Trust 2025-1.

b.      *Exceptions to FCC Release*.  Notwithstanding the release granted in clause (a) of this Section or any other term of this Agreement, the Parties agree and acknowledge that the following claims and rights of the United States are specifically reserved and are not released:  (i) any liability arising under Title 26 of the United States Code; (ii) any criminal liability; (iii) except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency; (iv) any liability to the United States (or its agencies) other than for the claims of the FCC; (v) any liability based upon obligations created by this Agreement; (vi) any liability of individuals who are not Released Parties; (vii) any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services; (viii) any liability for failure to deliver goods or services due; (ix) any liability for personal injury or property damage or for other consequential damages arising from the claims of the

FCC; and (x) any claims or causes of action that may be brought by the United States that arise under the False Claims Act, 31 U.S.C. §§ 3729-3733, any other federal statutes, or the common law.

9.  Companies' Releases.  The Companies (each on behalf of itself, its affiliates, subsidiaries, and parent corporations, their owners, officers, employees, and agents), upon the Payment Confirmation and simultaneously with the FCC Release, shall fully and finally release all claims and causes of action (including attorneys' fees, costs, and expenses of every kind and however denominated) that they have asserted, could have asserted, or may assert in the future against the Commission, or their officers, agents, employees, and servants, related to or derived from the Bid Deficiency Amount, the Additional Amount, the Prior Payments, FCC Auction 97, or the 10th Circuit Petition ("Companies' Releases"; together with the FCC Release, the "Releases"); *provided*, *however*, that if this Agreement is terminated pursuant to Section 14, then the Companies' Releases (other than those related to the 10th Circuit Petition) shall be rescinded consistent with the terms of Section 14.

10.  No Third-Party Beneficiaries.  With the exception of the persons and entities expressly identified in Sections 8 and 9, the Parties do not release any claims or causes of action against any other person or entity.  This Agreement is intended to be for the benefit of the Parties only and nothing herein, express or implied, shall give or be construed to give to any other person or entity any legal or equitable rights hereunder.

11.  11 U.S.C. §§ 547 and 548.  EchoStar warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the FCC of the Payment.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to EchoStar , within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which EchoStar  is or becomes indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

12.  Bankruptcy Filing.  If, within ninety-one (91) days of the Execution Date of this Agreement, the Payment, or of any other payment made under this Agreement, EchoStar  commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (x) seeking to have any order for relief of EchoStar's debts, or seeking to adjudicate EchoStar as bankrupt or insolvent; or (y) seeking the appointment of a receiver, trustee, custodian, or other similar official for EchoStar's assets, then EchoStar agrees as follows:

a.  *No Avoidance of Obligations*.  EchoStar's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and EchoStar shall not argue or otherwise take the position in any such case, proceeding, or action that (i) EchoStar's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) EchoStar was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the FCC; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to EchoStar.

b.  *Rescission of Releases*.  If EchoStar's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under Title 11 of the United States Code, the United States, at its sole option, may rescind the Releases, in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against EchoStar for the Bid Deficiency Amount, the Additional Amount, and any claims related thereto that would otherwise be covered by the FCC Release provided for in Section 8. EchoStar agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Section, and shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) EchoStar shall not plead, argue, or otherwise raise any defense under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within one hundred eighty (180) days of written notification to EchoStar that the FCC Release has been rescinded pursuant to this Section, except to the extent that these defenses were available immediately prior to the Execution Date; *provided*, *however*, that any applicable time limits shall be tolled between the Execution Date and the date of termination pursuant to this Section; and (iii) the United States has a valid claim against EchoStar in an amount not less than the Bid Deficiency Amount and the Additional Amount, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Section, as well as in any other case, action, or proceeding.

c. *Acknowledgment*. EchoStar acknowledges that its agreements in this Section are provided in exchange for valuable consideration provided in this Agreement.

13. Notices. Any notice pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission (with a paper copy delivered by mail thereafter) and shall be addressed as follows:

To the FCC:

Adam Candeub, General Counsel
Office of General Counsel
Federal Communications Commission
45 L Street NE
Washington, DC 20554
E-mail: adam.candeub@fcc.gov

With a cc to:

Joel Rabinovitz, Assistant General Counsel
Office of General Counsel
Federal Communications Commission
45 L Street NE
Washington, DC 20554
E-mail: joel.rabinovitz@fcc.gov

Joel Taubenblatt, Bureau Chief
Wireless Telecommunications Bureau
Federal Communications Commission
45 L Street NE
Washington, DC 20554
E-mail:  joel.taubenblatt@fcc.gov

To the Companies:

Jeff Blum
EchoStar
1001 G Street NW, Suite 700
Washington, DC 20001
E-mail: Jeffrey.blum@dish.com

Christine Crowe
WBK
1800 M Street NW, Suite 800N
Washington, DC 20036
E-mail: ccrowe@wbklaw.com

14.     Termination.

a.      *Termination*.  This Agreement may be terminated as follows: (i) by mutual written agreement of the Parties at any time prior to the commencement of bidding in FCC Auction 113; (ii) by the FCC with written notice pursuant to Section 13 upon an Uncured Default pursuant to Section 5(b); or (iii) by the FCC with written notice pursuant to Section 13 if the United States rescinds the Releases as a result of certain bankruptcy contingencies as specified in Section 12(b).

b.      *Effect of Termination*.  In the event of termination of this Agreement and except as otherwise provided for in Sections 5(c) and (12)(b), (i) the Releases shall be rescinded; (ii) the claims of the FCC that had been released pursuant to the FCC Release, including, without limitation, any and all claims related to the Northstar Guaranty and SNR Guaranty, shall be reinstated; and (iii) any other claims of the Companies that had been released pursuant to the Companies' Releases (other than those related to the 10th Circuit Petition) may be reinstated at the Companies' option.

15.     Unallowable Costs.

a.      *Defined*. All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of the Companies and their present or former officers, directors, employees, shareholders, and agents in connection with: (i) the matters covered by this Agreement; (ii) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement; (iii) the Companies' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees); (iv) the negotiation and performance of this Agreement; and (v) any payment EchoStar makes to the United States pursuant to this Agreement, are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b.      *Future Treatment of Unallowable Costs*.  Unallowable Costs will be separately determined and accounted for by the Companies, and the Companies shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.      *Treatment of Unallowable Costs Previously Submitted for Payment*.  Within 90 days of the Effective Date of this Agreement, the Companies shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by the Companies, or any of the Companies' subsidiaries or affiliates from the United States.  The Companies agree that the United States, at a minimum, shall be entitled to recoup from the Companies any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States reserves its rights to audit, examine, or re-examine the Companies' books and records and to disagree with any calculations submitted by the

Companies or any of the Companies' affiliates regarding any Unallowable Costs included in payments previously sought by the Companies, or the effect of any such Unallowable Costs on the amount of such payments.

16.     Governing Law and Jurisdiction.  This Agreement is governed by the federal laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Columbia.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.     Amendments.  This Agreement may not be amended except by mutual written agreement of the Parties.

18.     Assignment and Binding Effect.  Companies may not assign or transfer their rights or obligations under this Agreement without the prior written consent of the FCC.  To the extent that the Companies' rights or obligations hereunder are assigned or otherwise transferred with the prior written consent of the FCC or otherwise by operation of law, this Agreement is binding on the Companies' successors, transferees, heirs, and assigns.

19.     Authority.  The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20.     Severability.  If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision herein.

21.     Counterparts.  This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

22.     Fees and Expenses.  Except as otherwise provided in this Agreement, the Parties will bear their own costs and expenses (including attorneys' fees, costs, and expenses of every kind and however denominated) incurred in connection with this Agreement.

23.     Computation of Time.  The Parties agree that when any reference is made herein to time periods involving "days," the period shall mean calendar days unless otherwise expressly stated.  To the extent any deadlines fall on a Saturday, Sunday, or federal holiday, the deadline will be considered to fall on the next business day closest in time.

24.     Headings.  Section and subsection headings herein are for the convenience of the Parties and do not affect the meaning or interpretation of the provisions of this Agreement.

25.     Entire Agreement.  This Agreement constitutes the complete agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings between the Parties with respect to such subject matter.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Execution Date.

**FEDERAL COMMUNICATIONS COMMISSION**

By: _Adam Candeub_

Name: Adam Candeub

Title: General Counsel

**ECHOSTAR CORPORATION**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**DISH NETWORK CORPORATION**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**NORTHSTAR WIRELESS, LLC**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**SNR WIRELESS LICENSECO, LLC**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Execution Date.

**FEDERAL COMMUNICATIONS COMMISSION**

By: _____

Name: Adam Candeub

Title: General Counsel

**ECHOSTAR CORPORATION**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**DISH NETWORK CORPORATION**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**NORTHSTAR WIRELESS, LLC**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

**SNR WIRELESS LICENSECO, LLC**

By: _____

Name: Jeff Blum

Title: EVP, Government Affairs

# EXHIBIT A

# Original Licenses

| License | Description | Frequencies (MHz) | Channel Block | Bandwidth (MHz) |
|---|---|---|---|---|
| BEA010-I | NYC-Long Is. NY-NJ-CT-PA-MA-VT | 1765-1770/2165-2170 | I | 10 |
| BEA064-H | Chicago-Gary-Kenosha IL-IN-WI | 1760-1765/2160-2165 | H | 10 |
| CMA003-G | Chicago, IL | 1755-1760/2155-2160 | G | 10 |
| BEA023-J | Charlotte-Gastonia NC-SC | 1770-1780/2170-2180 | J | 20 |
| CMA006-G | Boston-Brockton-Lowell, MA-NH | 1755-1760/2155-2160 | G | 10 |
| CMA022-G | Tampa-St. Petersburg, FL | 1755-1760/2155-2160 | G | 10 |
| BEA018-H | Greensboro-Winston-Salem NC-VA | 1760-1765/2160-2165 | H | 10 |
| CMA013-G | Pittsburgh, PA | 1755-1760/2155-2160 | G | 10 |
| BEA020-H | Norfolk-Virginia Beach VA-NC | 1760-1765/2160-2165 | H | 10 |
| CMA061-G | Charlotte-Gastonia, NC | 1755-1760/2155-2160 | G | 10 |
| BEA172-I | Honolulu HI | 1765-1770/2165-2170 | I | 10 |
| BEA133-I | McAllen-Edinburg-Mission TX | 1765-1770/2165-2170 | I | 10 |
| BEA005-H | Albany-Schenectady-Troy NY | 1760-1765/2160-2165 | H | 10 |
| CMA032-G | Hartford-Bristol, CT | 1755-1760/2155-2160 | G | 10 |
| BEA104-I | Madison WI-IL-IA | 1765-1770/2165-2170 | I | 10 |
| CMA034-G | Rochester, NY | 1755-1760/2155-2160 | G | 10 |
| BEA033-H | Sarasota-Bradenton FL | 1760-1765/2160-2165 | H | 10 |
| CMA038-G | Providence-Warwick, RI | 1755-1760/2155-2160 | G | 10 |
| CMA074-G | Fresno, CA | 1755-1760/2155-2160 | G | 10 |
| BEA169-J | Richland-Kennewick-Pasco WA | 1770-1780/2170-2180 | J | 20 |
| CMA067-G | Greenville-Spartanburg, SC | 1755-1760/2155-2160 | G | 10 |
| BEA065-I | Elkhart-Goshen IN-MI | 1765-1770/2165-2170 | I | 10 |
| CMA042-G | Bridgeport-Stamford-Danbury CT | 1755-1760/2155-2160 | G | 10 |
| BEA021-I | Greenville NC | 1765-1770/2165-2170 | I | 10 |
| BEA017-I | Roanoke VA-NC-WV | 1765-1770/2165-2170 | I | 10 |
| CMA049-G | New Haven-Waterbury-Meriden CT | 1755-1760/2155-2160 | G | 10 |
| CMA081-G | El Paso, TX | 1755-1760/2155-2160 | G | 10 |
| CMA055-G | Worchester-Leominster, MA | 1755-1760/2155-2160 | G | 10 |
| BEA026-I | Charleston-North Charleston SC | 1765-1770/2165-2170 | I | 10 |
| CMA048-G | Toledo, OH-MI | 1755-1760/2155-2160 | G | 10 |
| CMA090-G | Charleston, SC | 1755-1760/2155-2160 | G | 10 |
| BEA066-I | Fort Wayne IN | 1765-1770/2165-2170 | I | 10 |
| CMA164-G | Fort Myers, FL | 1755-1760/2155-2160 | G | 10 |
| CMA080-G | Baton Rouge, LA | 1755-1760/2155-2160 | G | 10 |
| CMA117-G | Colorado Springs, CO | 1755-1760/2155-2160 | G | 10 |
| CMA069-G | Wilmington, DE-NJ-MD | 1755-1760/2155-2160 | G | 10 |
| CMA056-G | Northeast Pennsylvania, PA | 1755-1760/2155-2160 | G | 10 |
| BEA027-I | Augusta-Aiken GA-SC | 1765-1770/2165-2170 | I | 10 |
| CMA579-G | North Carolina 15 - Cabarrus | 1755-1760/2155-2160 | G | 10 |
| CMA159-G | Provo-Orem, UT | 1755-1760/2155-2160 | G | 10 |
| CMA083-G | Mobile, AL | 1755-1760/2155-2160 | G | 10 |
| CMA063-G | Springfield-Holyoke, MA | 1755-1760/2155-2160 | G | 10 |
| CMA120-G | Huntsville, AL | 1755-1760/2155-2160 | G | 10 |
| BEA039-I | Columbus GA-AL | 1765-1770/2165-2170 | I | 10 |
| CMA076-G | New Bedford-Fall River, MA | 1755-1760/2155-2160 | G | 10 |
| BEA086-I | Lake Charles LA | 1765-1770/2165-2170 | I | 10 |
| CMA088-G | Chattanooga, TN-GA | 1755-1760/2155-2160 | G | 10 |
| BEA046-I | Hickory-Morganton NC-TN | 1765-1770/2165-2170 | I | 10 |
| CMA105-G | Lancaster, PA | 1755-1760/2155-2160 | G | 10 |

| License | Description | Frequencies (MHz) | Channel Block | Bandwidth (MHz) |
|---|---|---|---|---|
| CMA085-G | Johnson City-Kingsport, TN-VA | 1755-1760/2155-2160 | G | 10 |
| BEA079-H | Montgomery AL | 1760-1765/2160-2165 | H | 10 |
| BEA097-I | Springfield IL-MO | 1765-1770/2165-2170 | I | 10 |
| BEA144-H | Billings MT-WY | 1760-1765/2160-2165 | H | 10 |
| CMA372-G | Georgia 2 - Dawson | 1755-1760/2155-2160 | G | 10 |
| CMA339-G | California 4 - Madera | 1755-1760/2155-2160 | G | 10 |
| BEA054-H | Erie PA | 1760-1765/2160-2165 | H | 10 |
| BEA135-I | Odessa-Midland TX | 1765-1770/2165-2170 | I | 10 |
| CMA123-G | Santa Rosa-Petaluma, CA | 1755-1760/2155-2160 | G | 10 |
| BEA123-I | Topeka KS | 1765-1770/2165-2170 | I | 10 |
| BEA143-I | Casper WY-ID-UT | 1765-1770/2165-2170 | I | 10 |
| CMA150-G | Visalia-Tulare-Porterville, CA | 1755-1760/2155-2160 | G | 10 |
| BEA087-I | Beaumont-Port Arthur TX | 1765-1770/2165-2170 | I | 10 |
| BEA113-H | Fargo-Moorhead ND-MN | 1760-1765/2160-2165 | H | 10 |
| CMA716-G | Wisconsin 9 - Columbia | 1755-1760/2155-2160 | G | 10 |
| CMA066-G | Youngstown-Warren, OH | 1755-1760/2155-2160 | G | 10 |
| CMA118-G | Reading, PA | 1755-1760/2155-2160 | G | 10 |
| BEA137-I | Lubbock TX | 1765-1770/2165-2170 | I | 10 |
| BEA148-I | Idaho Falls ID-WY | 1765-1770/2165-2170 | I | 10 |
| CMA125-G | Appleton-Oskosh-Neenah, WI | 1755-1760/2155-2160 | G | 10 |
| CMA360-G | Florida 1 - Collier | 1755-1760/2155-2160 | G | 10 |
| CMA645-G | Tennessee 3 - Macon | 1755-1760/2155-2160 | G | 10 |
| CMA087-G | Canton, OH | 1755-1760/2155-2160 | G | 10 |
| CMA307-G | Alabama 1 - Franklin | 1755-1760/2155-2160 | G | 10 |
| CMA375-G | Georgia 5 - Haralson | 1755-1760/2155-2160 | G | 10 |
| BEA016-I | Staunton VA-WV | 1765-1770/2165-2170 | I | 10 |
| CMA134-G | Atlantic City, NJ | 1755-1760/2155-2160 | G | 10 |
| BEA106-H | Rochester MN-IA-WI | 1760-1765/2160-2165 | H | 10 |
| CMA562-G | New York 4 - Yates | 1755-1760/2155-2160 | G | 10 |
| CMA103-G | Peoria, IL | 1755-1760/2155-2160 | G | 10 |
| CMA119-G | Evansville, IN-KY | 1755-1760/2155-2160 | G | 10 |
| CMA571-G | North Carolina 7 - Rockingham | 1755-1760/2155-2160 | G | 10 |
| CMA649-G | Tennessee 7 - Bledsoe | 1755-1760/2155-2160 | G | 10 |
| BEA089-H | Monroe LA | 1760-1765/2160-2165 | H | 10 |
| CMA172-G | Lincoln, NE | 1755-1760/2155-2160 | G | 10 |
| CMA448-G | Kentucky 6 - Madison | 1755-1760/2155-2160 | G | 10 |
| BEA061-I | Traverse City MI | 1765-1770/2165-2170 | I | 10 |
| BEA095-I | Jonesboro AR-MO | 1765-1770/2165-2170 | I | 10 |
| CMA136-G | Lorain-Elyria, OH | 1755-1760/2155-2160 | G | 10 |
| CMA361-G | Florida 2 - Glades | 1755-1760/2155-2160 | G | 10 |
| CMA446-G | Kentucky 4 - Spencer | 1755-1760/2155-2160 | G | 10 |
| CMA480-G | Michigan 9 - Cass | 1755-1760/2155-2160 | G | 10 |
| CMA714-G | Wisconsin 7 - Wood | 1755-1760/2155-2160 | G | 10 |
| CMA110-G | Huntington-Ashland, WV-KY-OH | 1755-1760/2155-2160 | G | 10 |
| BEA145-J | Great Falls MT | 1770-1780/2170-2180 | J | 20 |
| CMA556-G | New Mexico 4 - Santa Fe | 1755-1760/2155-2160 | G | 10 |
| BEA052-I | Wheeling WV-OH | 1765-1770/2165-2170 | I | 10 |
| CMA115-G | Utica-Rome, NY | 1755-1760/2155-2160 | G | 10 |
| CMA122-G | Binghamton, NY | 1755-1760/2155-2160 | G | 10 |

| License | Description | Frequencies (MHz) | Channel Block | Bandwidth (MHz) |
|---|---|---|---|---|
| CMA558-G | New Mexico 6 - Lincoln | 1755-1760/2155-2160 | G | 10 |
| BEA102-A1 | Davenport-Moline IA-IL | 1695-1700 | A1 | 5 |
| CMA234-G | Athens, GA | 1755-1760/2155-2160 | G | 10 |
| CMA340-G | California 5 - San Luis Obispo | 1755-1760/2155-2160 | G | 10 |
| CMA373-G | Georgia 3 - Chattooga | 1755-1760/2155-2160 | G | 10 |
| BEA105-H | La Crosse WI-MN | 1760-1765/2160-2165 | H | 10 |
| CMA154-G | New London-Norwich, CT | 1755-1760/2155-2160 | G | 10 |
| CMA491-G | Minnesota 10 - Le Sueur | 1755-1760/2155-2160 | G | 10 |
| CMA609-G | Oregon 4 - Lincoln | 1755-1760/2155-2160 | G | 10 |
| BEA058-I | Northern Michigan MI | 1765-1770/2165-2170 | I | 10 |
| CMA188-G | Amarillo, TX | 1755-1760/2155-2160 | G | 10 |
| CMA194-G | Waco, TX | 1755-1760/2155-2160 | G | 10 |
| CMA382-G | Georgia 12 - Liberty | 1755-1760/2155-2160 | G | 10 |
| CMA471-G | Massachusetts 2 - Barnstable | 1755-1760/2155-2160 | G | 10 |
| CMA362-G | Florida 3 - Hardee | 1755-1760/2155-2160 | G | 10 |
| CMA527-G | Montana 5 - Mineral | 1755-1760/2155-2160 | G | 10 |
| CMA559-G | New York 1 - Jefferson | 1755-1760/2155-2160 | G | 10 |
| CMA586-G | Ohio 2 - Sandusky | 1755-1760/2155-2160 | G | 10 |
| CMA465-G | Maine 3 - Kennebec | 1755-1760/2155-2160 | G | 10 |
| CMA270-G | Bellingham, WA | 1755-1760/2155-2160 | G | 10 |
| CMA287-G | Bryan-College Station, TX | 1755-1760/2155-2160 | G | 10 |
| CMA606-G | Oregon 1 - Clatsop | 1755-1760/2155-2160 | G | 10 |
| BEA110-H | Grand Forks ND-MN | 1760-1765/2160-2165 | H | 10 |
| BEA112-I | Bismarck ND-MT-SD | 1765-1770/2165-2170 | I | 10 |
| BEA168-I | Pendleton OR-WA | 1765-1770/2165-2170 | I | 10 |
| CMA311-G | Alabama 5 - Cleburne | 1755-1760/2155-2160 | G | 10 |
| CMA321-G | Arizona 4 - Yuma | 1755-1760/2155-2160 | G | 10 |
| CMA621-G | Pennsylvania 10 - Bedford | 1755-1760/2155-2160 | G | 10 |
| BEA149-I | Twin Falls ID | 1765-1770/2165-2170 | I | 10 |
| CMA143-G | Johnstown, PA | 1755-1760/2155-2160 | G | 10 |
| CMA184-G | Houma-Thibodaux, LA | 1755-1760/2155-2160 | G | 10 |
| CMA215-G | Chico, CA | 1755-1760/2155-2160 | G | 10 |
| CMA449-G | Kentucky 7 - Trimble | 1755-1760/2155-2160 | G | 10 |
| CMA618-G | Pennsylvania 7 - Jefferson | 1755-1760/2155-2160 | G | 10 |
| CMA692-G | Virginia 12 - Caroline | 1755-1760/2155-2160 | G | 10 |
| BEA173-H | Guam-Northern Mariana Islands | 1760-1765/2160-2165 | H | 10 |
| BEA173-I | Guam-Northern Mariana Islands | 1765-1770/2165-2170 | I | 10 |
| CMA227-G | Anderson, SC | 1755-1760/2155-2160 | G | 10 |
| CMA443-G | Kentucky 1 - Fulton | 1755-1760/2155-2160 | G | 10 |
| CMA644-G | Tennessee 2 - Cannon | 1755-1760/2155-2160 | G | 10 |
| CMA648-G | Tennessee 6 - Giles | 1755-1760/2155-2160 | G | 10 |
| CMA364-G | Florida 5 - Putnam | 1755-1760/2155-2160 | G | 10 |
| CMA399-G | Illinois 6 - Montgomery | 1755-1760/2155-2160 | G | 10 |
| CMA472-G | Michigan 1 - Gogebic | 1755-1760/2155-2160 | G | 10 |
| CMA523-G | Montana 1 - Lincoln | 1755-1760/2155-2160 | G | 10 |
| CMA220-G | Abilene, TX | 1755-1760/2155-2160 | G | 10 |
| CMA254-G | Redding, CA | 1755-1760/2155-2160 | G | 10 |
| CMA313-G | Alabama 7 - Butler | 1755-1760/2155-2160 | G | 10 |
| CMA342-G | California 7 - Imperial | 1755-1760/2155-2160 | G | 10 |

| License | Description | Frequencies (MHz) | Channel Block | Bandwidth (MHz) |
|---|---|---|---|---|
| CMA451-G | Kentucky 9 - Elliott | 1755-1760/2155-2160 | G | 10 |
| CMA510-G | Missouri 7 - Saline | 1755-1760/2155-2160 | G | 10 |
| CMA612-G | Pennsylvania 1 - Crawford | 1755-1760/2155-2160 | G | 10 |
| CMA180-G | Springfield, OH | 1755-1760/2155-2160 | G | 10 |
| CMA447-G | Kentucky 5 - Barren | 1755-1760/2155-2160 | G | 10 |
| CMA459-G | Louisiana 6 - Iberville | 1755-1760/2155-2160 | G | 10 |
| CMA620-G | Pennsylvania 9 - Greene | 1755-1760/2155-2160 | G | 10 |
| CMA226-G | Florence, AL | 1755-1760/2155-2160 | G | 10 |
| CMA228-G | Vineland-Millville, NJ | 1755-1760/2155-2160 | G | 10 |
| CMA240-G | Texarkana, AR-TX | 1755-1760/2155-2160 | G | 10 |
| CMA308-G | Alabama 2 - Jackson | 1755-1760/2155-2160 | G | 10 |
| CMA347-G | California 12 - Kings | 1755-1760/2155-2160 | G | 10 |
| CMA453-G | Kentucky 11 - Clay | 1755-1760/2155-2160 | G | 10 |
| CMA500-G | Mississippi 8 - Claiborne | 1755-1760/2155-2160 | G | 10 |
| CMA292-G | Sherman-Denison, TX | 1755-1760/2155-2160 | G | 10 |
| CMA450-G | Kentucky 8 - Mason | 1755-1760/2155-2160 | G | 10 |
| CMA452-G | Kentucky 10 - Powell | 1755-1760/2155-2160 | G | 10 |
| CMA515-G | Missouri 12 - Maries | 1755-1760/2155-2160 | G | 10 |
| CMA706-G | West Virginia 6 - Lincoln | 1755-1760/2155-2160 | G | 10 |
| CMA710-G | Wisconsin 3 - Vilas | 1755-1760/2155-2160 | G | 10 |
| CMA495-G | Mississippi 3 - Bolivar | 1755-1760/2155-2160 | G | 10 |
| CMA713-G | Wisconsin 6 - Trempealeau | 1755-1760/2155-2160 | G | 10 |
| CMA717-G | Wisconsin 10 - Door | 1755-1760/2155-2160 | G | 10 |
| CMA225-G | Altoona, PA | 1755-1760/2155-2160 | G | 10 |
| CMA231-G | Mansfield, OH | 1755-1760/2155-2160 | G | 10 |
| CMA277-G | Sheboygan, WI | 1755-1760/2155-2160 | G | 10 |
| CMA343-G | California 8 - Tehama | 1755-1760/2155-2160 | G | 10 |
| CMA358-G | Connecticut 2 - Windham | 1755-1760/2155-2160 | G | 10 |
| CMA501-G | Mississippi 9 - Copiah | 1755-1760/2155-2160 | G | 10 |
| CMA513-G | Missouri 10 - Benton | 1755-1760/2155-2160 | G | 10 |
| CMA681-G | Virginia 1 - Lee | 1755-1760/2155-2160 | G | 10 |
| CMA238-G | Sharon, PA | 1755-1760/2155-2160 | G | 10 |
| CMA345-G | California 10 - Sierra | 1755-1760/2155-2160 | G | 10 |
| CMA427-G | Iowa 16 - Lyon | 1755-1760/2155-2160 | G | 10 |
| CMA272-G | Gadsden, AL | 1755-1760/2155-2160 | G | 10 |
| CMA293-G | Owensboro, KY | 1755-1760/2155-2160 | G | 10 |
| CMA595-G | Ohio 11 - Columbiana | 1755-1760/2155-2160 | G | 10 |
| CMA587-G | Ohio 3 - Ashtabula | 1755-1760/2155-2160 | G | 10 |
| CMA624-G | Rhode Island 1 - Newport | 1755-1760/2155-2160 | G | 10 |
| CMA284-G | Elmira, NY | 1755-1760/2155-2160 | G | 10 |
| CMA370-G | Florida 11 - Monroe | 1755-1760/2155-2160 | G | 10 |
| CMA512-G | Missouri 9 - Bates | 1755-1760/2155-2160 | G | 10 |
| CMA625-G | South Carolina 1 - Oconee | 1755-1760/2155-2160 | G | 10 |
| CMA507-G | Missouri 4 - De Kalb | 1755-1760/2155-2160 | G | 10 |
| CMA600-G | Oklahoma 5 - Roger Mills | 1755-1760/2155-2160 | G | 10 |
| CMA419-G | Iowa 8 - Monona | 1755-1760/2155-2160 | G | 10 |
| CMA733-G | American Samoa | 1755-1760/2155-2160 | G | 10 |
| CMA504-G | Missouri 1 - Atchison | 1755-1760/2155-2160 | G | 10 |
| CMA650-G | Tennessee 8 - Johnson | 1755-1760/2155-2160 | G | 10 |

| License | Description | Frequencies (MHz) | Channel Block | Bandwidth (MHz) |
|---|---|---|---|---|
| CMA306-G | Gulf of America | 1755-1760/2155-2160 | G | 10 |

# EXHIBIT B

## Wire Instructions

Pursuant to Section 3 of the Settlement Agreement, to which this Exhibit B is attached, EchoStar shall make the Payment as set forth below:

The FCC instructs EchoStar to pay the Settlement Amount to the specified party as instructed below. Simultaneous to the release of such funds to the below account, EchoStar shall transmit a complete and accurate Fedwire Instruction (attached hereto as Appendix 1) and simultaneously provide notice that such Instruction was transmitted via electronic mail to

# APPENDIX 1

## Fedwire Instruction
(attached)

**FEDERAL COMMUNICATIONS COMMISSION**
**REMITTANCE ADVICE**
FORM 159

| (1) LOCKBOX # | | SPECIAL USE ONLY |
| --- | --- | --- |
| | | FCC USE ONLY |

**SECTION A – PAYER INFORMATION**

| (2) PAYER NAME (if paying by credit card enter name exactly as it appears on the card) | (3) TOTAL AMOUNT PAID (U.S. Dollars and cents) |
| --- | --- |

| (4) STREET ADDRESS LINE NO.1 |
| --- |

| (5) STREET ADDRESS LINE NO. 2 |
| --- |

| (6) CITY | (7) STATE | (8) ZIP CODE |
| --- | --- | --- |

| (9) DAYTIME TELEPHONE NUMBER (include area code) | (10) COUNTRY CODE (if not in U.S.A.) |
| --- | --- |

**FCC REGISTRATION NUMBER (FRN) REQUIRED**

| (11) PAYER (FRN) | (12) FCC USE ONLY |
| --- | --- |

**IF MORE THAN ONE APPLICANT, USE CONTINUATION SHEETS (FORM 159-C)**
**COMPLETE SECTION BELOW FOR EACH SERVICE, IF MORE BOXES ARE NEEDED, USE CONTINUATION SHEET**

| (13) APPLICANT NAME |
| --- |

| (14) STREET ADDRESS LINE NO.1 |
| --- |

| (15) STREET ADDRESS LINE NO. 2 |
| --- |

| (16) CITY | (17) STATE | (18) ZIP CODE |
| --- | --- | --- |

| (19) DAYTIME TELEPHONE NUMBER (include area code) | (20) COUNTRY CODE (if not in U.S.A.) |
| --- | --- |

**FCC REGISTRATION NUMBER (FRN) REQUIRED**

| (21) APPLICANT (FRN) | (22) FCC USE ONLY |
| --- | --- |

**COMPLETE SECTION C FOR EACH SERVICE, IF MORE BOXES ARE NEEDED, USE CONTINUATION SHEET**

| (23A) CALL SIGN/OTHER ID | (24A) PAYMENT TYPE CODE | (25A) QUANTITY |
| --- | --- | --- |
| (26A) FEE DUE FOR (PTC) | (27A) TOTAL FEE | FCC USE ONLY |
| (28A) FCC CODE I | (29A) FCC CODE 2 | |
| (23B) CALL SIGN/OTHER ID | (24B) PAYMENT TYPE CODE | (25B) QUANTITY |
| (26B) FEE DUE FOR (PTC) | (27B) TOTAL FEE | FCC USE ONLY |
| (28B) FCC CODE I | (29B) FCC CODE 2 | |

**SECTION D – CERTIFICATION**

CERTIFICATION STATEMENT
I_____, certify under penalty of perjury that the foregoing and supporting information is true and correct to the best of my knowledge, information and belief.

SIGNATURE_____     DATE_____

**SECTION E - CREDIT CARD PAYMENT INFORMATION**

MASTERCARD_____     VISA_____     AMEX_____     DISCOVER_____

ACCOUNT NUMBER_____     EXPIRATION DATE_____

I hereby authorize the FCC to charge my credit card for the service(s)/authorization herein described.

SIGNATURE_____     DATE_____

SEE PUBLIC BURDEN ON REVERSE          FCC FORM 159          FEBRUARY 2003

Approved by OMB
3060-0589

FEDERAL COMMUNICATIONS COMMISSION
## REMITTANCE ADVICE (CONTINATION SHEET)
### FORM 159-C

Page No _2_ of _2_

| SPECIAL USE |
| --- |
| FCC USE ONLY |

**USE THIS SECTION ONLY FOR EACH ADDITIONAL APPLICANT**
**SECTION BB – ADDITIONAL APPLICANT INFORMATION**

(13) APPLICANT NAME

(14) STREET ADDRESS LINE NO.1

(15) STREET ADDRESS LINE NO. 2

| (16) CITY | (17) STATE | (18) ZIP CODE |
| --- | --- | --- |

| (19) DAYTIME TELEPHONE NUMBER (include area code) | (20) COUNTRY CODE (if not in U.S.A.) |
| --- | --- |

**FCC REGISTRATION NUMBER (FRN) REQUIRED**

| (21) APPLICANT (FRN) | (22) FCC USE ONLY |
| --- | --- |

**COMPLETE SECTION C FOR EACH SERVICE, IF MORE BOXES ARE NEEDED, USE CONTINUATION SHEET**

| (23A) CALL SIGN/OTHER ID | (24A) PAYMENT TYPE CODE | (25A) QUANTITY |
| --- | --- | --- |
| (26A) FEE DUE FOR (PTC) | (27A) TOTAL FEE | FCC USE ONLY |
| (28A) FCC CODE I | (29A) FCC CODE 2 | |

| (23B) CALL SIGN/OTHER ID | (24B) PAYMENT TYPE CODE | (25B) QUANTITY |
| --- | --- | --- |
| (26B) FEE DUE FOR (PTC) | (27B) TOTAL FEE | FCC USE ONLY |
| (28B)FCC CODE I | (29B) FCC CODE 2 | |

| (23C) CALL SIGN/OTHER ID | (24C) PAYMENT TYPE CODE | (25C) QUANTITY |
| --- | --- | --- |
| (26C) FEE DUE FOR (PTC) | (27C) TOTAL FEE | FCC USE ONLY |
| (28C) FCC CODE I | (29C) FCC CODE 2 | |

| (23D) CALL SIGN/OTHER ID | (24D) PAYMENT TYPE CODE | (25D) QUANTITY |
| --- | --- | --- |
| (26D) FEE DUE FOR (PTC) | (27D) TOTAL FEE | FCC USE ONLY |
| (28D)FCC CODE I | (29D) FCC CODE 2 | |

| (23E) CALL SIGN/OTHER ID | (24E) PAYMENT TYPE CODE | (25E) QUANTITY |
| --- | --- | --- |
| (26E) FEE DUE FOR (PTC) | (27E) TOTAL FEE | FCC USE ONLY |
| (28E) FCC CODE I | (29E) FCC CODE 2 | |

| (23F) CALL SIGN/OTHER ID | (24F) PAYMENT TYPE CODE | (25F) QUANTITY |
| --- | --- | --- |
| (26F) FEE DUE FOR (PTC) | (27F) TOTAL FEE | FCC USE ONLY |
| (28F)FCC CODE I | (29F) FCC CODE 2 | |

SEE PUBLIC BURDEN ON REVERSE          FCC FORM 159-C          FEBRUARY 2003

# ADVICE REFERENCE GUIDE
## HOW TO USE FCC FORM 159-REMITTANCE ADVICE
### FEBRUARY 2003

The FCC Form 159, "Remittance Advice," and FCC Form 159-C, (Continuation Sheet) is a multi-purpose form that must accompany any payment to the Federal Communications Commission (e.g., Regulatory Fees, Processing Fees, Auctions, Fines, Forfeitures, Freedom of Information Act (FOIA) Billings, or any other debt due to the FCC). The information on this form is collected to ensure credit for full payment, to ensure you receive any refunds due, to service public inquiries, and to comply with the Debt Collection Improvement Act of 1996.

Note: Fee Filing Guides can be obtained by calling Forms Distribution -- (202) 418-3676 or 1-800-418-3676, or by calling FCC's fax-on-demand -- (202) 418-0177 from the handset of a fax machine.

## Instructions for Completing FCC Form 159 & 159-C

## NOTE: All required blocks must be completed or it may result in a delay in processing or the return of your application.

(1) **Lockbox No. #** – Enter the appropriate six-digit P.O. Box Number as found in either the FCC Fee Filing Guide for the service requested, or as specified in the Public Notice.

### SECTION A

(2) **Payer Name** – Enter the name of the person or company (i.e., maker of the check) making the payment. If using an individual name, enter the last name, first name, and middle initial. If a company, enter the name used commercially. If paying by credit card, enter the name exactly as it appears on your card.

(3) **Total Amount Paid** – Enter the total amount of your remittance.

(4) **Street Address Line 1** – The street address or post office box number to which correspondence should be sent.

(5) **Street Address Line 2** – This line may be used if further identification of the address is required.

(6) **City** – The name of the city associated with the street address given in (4).

(7) **State** – If the payer has a United States mailing address enter the appropriate two-digit state abbreviation as prescribed by the U.S. Post Office. If the payer has a mailing address outside the United States, leave this section blank.

(8) **ZIP Code** – Enter the appropriate five or nine-digit ZIP code prescribed by the U.S. Post Office. If address is foreign, enter the appropriate ZIP (postal) code.

(9) **Daytime Telephone Number** – Enter the payer's ten-digit daytime telephone number, including area code. For foreign telephone numbers include the appropriate country dialing access code, as if you were calling from the United States. This daytime number should be the number where you can be reached during normal business hours.

(10) **Country Code** – This section is for payers who have an address outside the United States of America. Enter the appropriate code here. To obtain country code information, contact the Mailing Requirements Dept. of the U.S. Postal Service.

(11) **Payer (FRN)** – Enter the payer's ten-digit FCC Registration Number (FRN) assigned by the Commission Registration System (CORES). The FRN is a unique entity identifier for everyone doing business with the Commission. The FRN can be obtained electronically through the FCC webpage (www.fcc.gov.com) or by requesting FCC Form 160 through the FCC forms webpage (www.fcc.gov/formpage.html).

(12) **FCC Use Only**

**(You must complete Section A - Block 11: FCC Registration Number)**

### SECTION B

#### COMPLETE THIS SECTION IF THE PAYER AND APPLICANT ARE DIFFERENT

(13) **Applicant Name** – Enter the name (last, first, middle initial) as it appears on the original application or filing being submitted. **Applicant** includes Licensees, Regulatees or Debtors. If you are using this form to pay for multiple applicants with a single remittance, each applicant must be listed separately using the continuation sheet - Form 159-C. **(If the name is the same as the payer (block 2), it is not necessary to fill out this section. MOVE TO SECTION C.)**

(14) **Street Address Line 1** – The street address or post office box number to which correspondence should be sent.

(15) **Street Address Line 2** – This line may be used if further identification of the address is required.

(16) **City** – The name of the city associated with the street address given in (14).

(17) **State** – If the applicant has a United States mailing address enter the appropriate two-digit state abbreviation as prescribed by the U.S. Post Office. If the applicant has a mailing address outside the United States, leave this section blank.

(18) **ZIP Code** – Enter the appropriate five or nine-digit ZIP code prescribed by the U.S. Post Office. If address is foreign, enter the appropriate ZIP (postal) code.

(19) **Daytime Telephone Number** – Enter the applicant's ten-digit daytime telephone number, including area code. For foreign telephone numbers include the appropriate country dialing access code, as if you were calling from the United States. This daytime number should be the number where you can be reached during normal business hours.

(20) **Country Code** – This section is for applicants who have an address outside the United States of America. Enter the appropriate code here. To obtain country code information, contact the Mailing Requirements Dept. of the U.S. Postal Service.

(21) **Applicant (FRN**). Enter the applicant's ten-digit number FRN assigned by the Commission Registration System (CORES). The FRN is a unique entity identifier for everyone doing business with the Commission. The FRN can be obtained electronically through the FCC webpage (www.fcc.gov.com) or by requesting FCC Form 160 through the FCC forms webpage (www.fcc.gov/formpage.html).

(22) **FCC Use Only**

**(You <u>must</u> complete Section B - Block 21: FCC Registration Number)**

**<u>SECTION C</u>**

(23) **Call Sign/Other ID** – Enter an applicable call sign or unique FCC identifier, if any, as prescribed by the appropriate FCC Fee Filing Guide or Public Notice.

(24) **Payment Type Code** – Enter the appropriate payment type code for the service you are requesting as found in the appropriate FCC Fee Filing Guide or Public Notice. (Incorrect or omitted payment type codes may result in your application or filing being returned to you without further processing.) You are allowed to file multiple actions on one FCC Form 159. There are three ways "multiple actions" are defined. The following examples provide instructions on how multiple actions should be filed when using FCC Forms 159 & 159-C:

(i) If a single service allows for a quantity of more than one of the same action, as defined in the appropriate FCC Fee Filing Guide or Public Notice, complete Section C (e.g., if you are filing an ownership report in the mass media services you may pay for both your AM & FM stations using the same payment type code and a quantity of two as long as it can be filed in the same lockbox). Blocks **28 & 29** are only to be completed when required by the Bureau/Office or by Public Notice.

(ii) If you are filing concurrent actions (not the same actions) in the same lockbox, on the same application, refer to the appropriate FCC Fee Filing Guide or Public Notice for specific instructions as to the number of quantities allowed. Complete Section C (e.g., you may file a regulatory fee for a CARS license and Broadcast Auxiliary license or you may file a regulatory fee for a mass media service and a common carrier service on the same FCC Form 159 by using the designated payment type codes, and quantities as defined by the Public Notice). Complete a separate item for each action required. Blocks **28 & 29** are only to be completed when required by the Bureau/Office or by Public Notice.

(iii) If a single Remittance Advice is used to pay for more than one applicant, licensee, regulatee or debtor, for permitted action(s) in the same lockbox, then a Continuation Sheet (159-C) must be completed for each applicant, licensee, regulatee or debtor (e.g., if you are paying for different applicants submitting separate Domestic 214 Applications in the common carrier services, they can all be filed on one FCC Form 159 as long as they are filed in the same lockbox). A separate FCC Form 159 must be completed and submitted for each applicant. Blocks **28 & 29** are only to be completed when required by the Bureau/Office or by Public Notice.

Remember, if any of these additional applications fall into category (i) or (ii) above, you can follow those instructions. Make sure to check the appropriate FCC Fee Filing Guide or Public Notice for any special filing stipulations that may apply.

(25) **Quantity** – Enter the total number of actions required with this submission. Refer to the FCC Fee Filing Guide or Public Notice for information concerning multiple requests.

(26) **FEE Due for (PTC)** – Enter the fee due for the PTC listed in item 24.

(27) **Total Fee** – Enter the total fee due by multiplying Block 25 (Quantity) times Block 26 (Fee Due for PTC).

(28) **FCC Code 1** – This section is used for special filing codes as required by the Bureau/Office or Public Notice. Do not complete this block unless instructed to do so.

(29) **FCC Code 2** – This section is used for special filing codes as required by the Bureau/Office or Public Notice. Do not complete this block unless instructed to do so.

## SECTION D

(30) **Certification Statement** – This section must be completed and signed. Failure to do so may delay the processing of your application/filing.

## SECTION E

(31) **Credit Card Payment Information** – If remitting payment by credit card, place an "x" in the appropriate block for the credit card being used – MasterCard, Visa, AMEX, or Discover. Enter your credit card number and expiration date (For example: (mm/yyyy)). Sign and date the FCC Form 159 to authorize your credit card payment. (If any area required for credit card approval is incomplete, the application will be returned unprocessed.)

### Form 159-C FCC Remittance Advice Continuation Sheet

Use this form for any additional services pertaining to this filing or if you are paying for multiple applicants with a single payment. (See Sections B and C of the instructions to assist you in completing this form). For each additional applicant listed in Section BB of the FCC Form 159-C, you must complete Section BB - Block 21: FCC Registration Number. Each additional applicant must use a separate Form 159-C.

**Note: Checks must be denominated in U.S. Currency and deposited in an U.S. financial institution. No checks drawn on a foreign bank will be accepted.**

### NOTICE TO INDIVIDUALS REQUIRED BY THE PRIVACY ACT OF 1974 AND THE PAPERWORK REDUCTION ACT OF 1995

The solicitation of the personal information requested in this form is authorized by the Communications Act, Sections 8 & 9, and the Debt Collection Improvement Act of 1996. P.L. 104-134. This form will be used primarily to capture information to maintain required accounts receivable, and collect fines and debts due the Commission. As part of the Debt Collection Improvement Act, agencies are authorized to refer specific Taxpayers Identification information which includes Employers Identification Numbers and Social Security Numbers to the Department of Treasury for further investigation and possible enforcement of a statute, rule, regulation or order. If we believe there may be a violation or potential violation of a FCC statute, regulation, rule or order, your application may be referred to the Federal, state, or local agency responsible for investigating, prosecuting, enforcing or implementing the statute, rule, regulation or order. In certain cases, the information in your application may be disclosed to the Department of Justice or a court or adjudicative body when (a) the FCC; or (b) any employee of the FCC; or (c) the United States Government, is a party to a proceeding before the body or has an interest in the proceeding. If information requested on the form is not provided, processing of the application/filing may be delayed or returned without action pursuant to Commission rules.

If you owe a past due debt to the Federal Government, the Taxpayer Identification Number (such as your Social Security Number) and other information you provide may also be disclosed to the Department of the Treasury, Financial Management Service, other federal agencies and/or your employer to offset your salary, IRS tax refund or other payments to collect that debt. The FCC may also provide this information to these agencies through the matching of computer records when authorized.

We have estimated that each response to this collection of information will take 10 minutes to 4 hours. Our estimate includes the time to read the instructions, look through existing records, gather and maintain required data, and actually review and complete the form. If you have any comments on this estimate, or on how we can improve the collection of this data to reduce the burden it causes you, please write the Federal Communication Commission, AMD-PERM, Washington, DC 20554, Paperwork Reduction Project (3060-0589). We will also accept your comments via the Internet if you send them to pra@fcc.gov. Please **DO NOT SEND COMPLETED APPLICATION FORMS TO THIS ADDRES**S.

Remember -- You are not required to respond to a collection of information sponsored by the Federal government, and the government may not conduct or sponsor this collection, unless it displays a currently valid OMB control number or if we fail to provide you with this notice. This collection has been assigned an OMB control number of 3060-0589.

This notice is required by the Privacy Act of 1974, Public Law 93-579, December 31, 1974, 5 U.S.C. Section 552a(e)(3) and the Paperwork Reduction Act of 1995, Public Law 104-13, October 1, 1995, 44 U.S.C. 3507.